IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18–cv–00588–RM–SKC

LARRY ALLEN THOMPSON,

     Plaintiff,

v.

JASON LENGRICH, WARDEN, BUENA VISTA CORR. FAC.,
JENNIFER HANSEN, BVCF SECURITY SVC. CAPTAIN,
WILLIAM CATTELL, BVCF EAST UNIT SUPERVISOR, and
THE COLORADO DEPARTMENT OF CORRECTIONS (CDOC),

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge S. Kato Crews**

Before the Court is Defendants' "Motion to Dismiss the Second Amended Complaint [ECF No. 82] Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." (["Motion"], Doc. No. 94.) Plaintiff has responded in opposition to the Motion, and Defendants have replied. (["Response"], Doc. No. 97; ["Reply"], Doc. No. 103.) For the following reasons, it is RECOMMENDED that the Motion be GRANTED, and that this case be DISMISSED.

## STATEMENT OF THE CASE

*Pro se* Plaintiff Larry Allen Thompson ["Mr. Thompson," or "Plaintiff"], an incarcerated person in the custody of the Colorado Department of Corrections ["CDOC"], brings this action under 42 U.S.C. § 1983, alleging that he was subjected to unconstitutional conditions of confinement while incarcerated at the CDOC's Buena Vista Correctional Facility ["BVCF"]. (["Second Amended Complaint"], Doc. No. 82.) Mr. Thompson alleges, specifically, that BVCF is chronically overcrowded and understaffed, and that these conditions, along with the prison's shower conditions and policies, violated his rights under the Eighth and Fourteenth Amendments. (*Id.* at 5-21.)

### I. Shower Conditions

Mr. Thompson reportedly suffers from Post-Traumatic Stress Syndrome/Disorder ["PTSS/D"] stemming from childhood sexual abuse, which inhibits him from taking communal showers with other male inmates. (*Id.* at 7.) Plaintiff also apparently has a "physical defect" in his genital areas, which "exacerbates" his "physical and psychological need for privacy" and "security" while showering. (*Id.* at 9.) CDOC Administrative Regulation ["AR"] #100-40, which was passed to implement the Prison Rape Elimination Act, 34 U.S.C. §§ 30301-30309, and its accompanying regulations, *see* 28 C.F.R. Pt. 115, obligates prisons to provide inmates who self-identify as transgender or intersex with the opportunity to shower separately from other inmates. Neither AR #100-40, nor the federal regulations,

authorize private showers for other inmates with special needs, such as Mr. Thompson.

According to the Second Amended Complaint, on September 19, 2017, BVCF prison officials "arbitrarily" transferred Mr. Thompson from the BVCF's Upper East Unit, which has private shower stalls, to the prison's Lower East Unit, which has only communal showering facilities. (*Id.* at 5.) Plaintiff alleges that the East Unit Supervisor, Defendant William Cattell, "personally supported" his transfer to the Lower East Unit, notwithstanding the fact that Defendant Cattell was "aware" of Plaintiff's PTSS/D diagnosis and corresponding "personal safety concerns" with respect to communal prison showers. (*Id.*) Mr. Thompson alleges that, in the days preceding his transfer to the Lower East Unit, Defendant Cattell denied his grievance relating to communal showers, making clear that Mr. Thompson could shower privately at the prison, only by "self-identifying" as either "a transgender[] or an intersex(ual) prisoner." (*Id.*)

According to the Second Amended Complaint, within hours of his transfer to the Lower East Unit, Mr. Thompson declared a "Mental Health Emergency." (*Id.* at 6.) Later that same day, Mr. Thompson's wife reportedly "contacted" BVCF regarding her husband's "mental health and well[-]being," and that "communication" was ultimately "forwarded" to the prison's Custody/Control Manager, Defendant Jennifer Hansen. (*Id.*) Plaintiff alleges that Defendant Hansen then "personally came to the East living unit to confront [him] about what is[] and/or is not considered by the

3

administration to be a mental health emergency or issue." (*Id.*) Defendant Hansen apparently told Plaintiff, "in no uncertain terms," that his "safety concerns" were "irrelevant," making clear that his antipathy towards communal showering was not her "problem." (*Id.*) Mr. Thompson alleges that Defendant Hansen then "threat[ened]" him, by stating that he "could either comply" with the transfer to the Lower East Unit, or else "be taken to Restrictive housing (segregation)." (*Id.*)

Following these events, Plaintiff reportedly refused to shower communally, and the BVCF staff apparently did not force him to do so. (*Id.* at 6-11.) As a result, Mr. Thompson did not bathe, at all, for approximately twenty-five days. (*Id.* at 7.) Mr. Thompson complains that, during that time, he was "forced to needlessly suffer and endure" significant "psychological torture," causing him "to live in a heightened state of fear of physical retaliation and possible assault from his cellmate for not showering." (*Id.*) In the interim, by letter dated September 29, 2017, the BVCF Warden, Defendant Jason Lengerich, informed Plaintiff's wife that her husband "w[ould] not be granted private showers," because he "did not self-report as being transgender, gender non-conforming, or intersex." (*Id.* at 6-7.) Two weeks later, however, the CDOC's Director of Prison Operations reportedly directed Defendant Lengerich "to allow Plaintiff to resume showering privately." (*Id.* at 7.) Defendant Lengerich apparently "complied" with that order, on October 14, 2017. (*Id.*)

**II. Overcrowding and Understaffing**

4

In this lawsuit, Plaintiff also alleges that BVCF is unconstitutionally overcrowded and understaffed. (*Id.* at 16-21.) Mr. Thompson complains that his BVCF cell, which has only 21.5 square feet of unencumbered space, and which was intended for single occupancy—must be "shared by two fully grown men for an aver[age] of 18 to 24 hours per day; and at times, 24 hours per day for weeks on end." (*Id.* at 18.) The BVCF cells are said to have "sealed windows [and] inadequate ventilation," creating conditions which are "unsafe" for Mr. Thompson, given that his immune system is "permanently compromised." (*Id.*) Mr. Thompson reports that he has been forced to endure several multi-day lockdowns at BVCF, including an eleven-day lockdown in the spring of 2018, during which he was allowed outside of his cell for a total of forty minutes, solely to shower, and where "no disinfectants or other basic [] cleaning supplies" were provided to inmates. (*Id.*)

Mr. Thompson also complains that there are "chronic staffing shortfalls" at BVCF, which are "directly attributable" to Defendant Lengerich's "forced policies of long, and often consecutive work-shifts." (*Id.* at 16, 18.) Plaintiff alleges that BVCF's understaffing issues "feed[] into the danger of the overcrowded conditions," resulting in a "great[er] risk and likelihood" of physical harm to inmates and prison guards alike. (*Id.* at 16.) Mr. Thompson claims that he has "personally witnessed" an increased number of "violent" incidents at BVCF, including "gang beatings," "sexual assaults," and "gang/race related murders," many of which remain "undetected" and "unreported." (*Id.* at 16-17.) Mr. Thompson recounts one instance in which he

5

"personally alerted the depleted South Unit staff to a bloody altercation between two [intoxicated] inmates," thereby "putting himself at risk" of "permanent disfigurement, or even death." (*Id.* at 17.) Plaintiff further reports that, in April 2018, he witnessed "a major gang fight/riot" involving upwards of fifty BVCF inmates, and which, due to understaffing, "last[ed] without any meaningful intervention for nearly 10 minutes leaving several inmates beaten [and] bloodied." (*Id.* at 19.) Plaintiff informs the Court of another incident that occurred in 2019, where "understaffing stress was so high" that several prison guards were "momentarily held hostage" by "an officer manning the main gate entrance," who apparently "brandished" an AR-15 assault rifle in a "seriously threatening manner." (*Id.*)

### III. Procedural History

Based on these allegations, on March 12, 2018, Mr. Thompson commenced this federal civil rights action, initially against Defendants Cattell, Hansen, and Lengerich, seeking a vindication of his rights under the Fourth, Eighth, and Fourteenth Amendments. (Doc. No. 1.) On March 25, 2021, Plaintiff filed a Second Amended Complaint, adding the CDOC as a defendant, and asserting four claims for relief: (1) "Violation of Plaintiff's 14th Amendment right to 'Bodily Privacy;'" (2) "Violation of Plaintiff's Fourteenth Amendment right to Equal Protection of the law in relation to 'Similarly Situated' persons;" (3) "Violation of Plaintiff's Eighth Amendment right to 'humane conditions of confinement' without the wanton infliction of cruel and unusual punishment due to the Overcrowded and Understaffed

6

conditions at BVCF;" and (4) "Violation(s) of Plaintiff's 8th and 14th Amendment rights by the Colorado Department of Corrections (CDOC), Defendant #4." (Second Am. Compl. 4-21.) The claims are asserted against Defendants Cattell, Hansen, and Lengerich, in their individual capacities, and against the CDOC, in its official capacity. (*Id.* at 3-4.) Plaintiff demands monetary damages from Defendants Cattell, Hansen, and Lengerich, and he seeks prospective injunctive relief from the CDOC. (*Id.* at 3-4, 23-24.)

Defendants now move to dismiss the Second Amended Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. 1.) In the Motion, Defendants contend that Plaintiff lacks standing to bring a Fourteenth Amendment bodily privacy claim, because he has alleged no injury in fact. (*Id.* at 8-9.) Defendants further argue that the claims against the CDOC must be dismissed, because they are time-barred by the two-year statute of limitations that applies to claims brought under 42 U.S.C. § 1983. (*Id.* at 21-24.) In addition, they argue that all of Plaintiff's claims, whether brought under the Eighth or Fourteenth Amendment, are inadequately pleaded. (*Id.* at 9-21.) Finally, Defendants Cattell, Hansen, and Lengerich contend that they are entitled to qualified immunity in this case. (*Id.*)

## STANDARDS OF REVIEW

### I. *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted

by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.

*See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### III. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.

9

R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

A court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### I. Eleventh Amendment Immunity

Mr. Thompson asserts § 1983 claims against the CDOC for purported violations of his Eighth and Fourteenth Amendment rights. (Second Am. Compl. 20-21.) However, as Defendants argue for the first time in their Reply,[1] the Eleventh Amendment bars these claims. (*See* Reply 3-4 & n.1.)

---

[1] Ordinarily, "arguments raised for the first time in a reply brief are waived." *In re Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017) (citing *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)). However, Eleventh Amendment immunity "may be raised at any time, even on appeal for the first time." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (citations omitted).

11

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar any action brought against a state in federal court, including suits initiated by a state's own citizens. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Eleventh Amendment immunity extends to states and state entities deemed "arms of the state," but not to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Absent a waiver, states and their agencies are entitled to Eleventh Amendment immunity, regardless of the type of relief sought. *Id.* at 1252-53 (citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998)); *see Hunt v. Colo. Dep't of Corrs.*, 271 F. App'x 778, 780-81 (10th Cir. 2008) (observing that Eleventh Amendment immunity may be waived either by an act of Congress, or by the state itself "through a clear expression of its intent to waive").

The CDOC is an "arm" of the State of Colorado that is entitled to Eleventh Amendment immunity. *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988); *see* Colo. Rev. Stat. § 24-1-128.5 (creating the CDOC as a state entity). The State of Colorado has not waived its sovereign immunity on behalf of the CDOC. *Id.* (holding

12

that the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101, *et seq.*, does not waive the State's sovereign immunity, which extends to the CDOC). Nor has Congress abrogated state sovereign immunity through its promulgation of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accordingly, Mr. Thompson's claims against the CDOC are barred by the Eleventh Amendment. *See Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1233 (D. Colo. 2009) ("Without question, the Eleventh Amendment precludes [the plaintiff's] Section 1983 claims against the CDOC."). The court, therefore, recommends that those claims be dismissed without prejudice, under Rule 12(b)(1), for lack of jurisdiction. *See Griess*, 841 F.2d at 1044-45 (affirming the dismissal of § 1983 claims against the CDOC on Eleventh Amendment immunity grounds); *see also Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional, th[e] dismissal should [be] without prejudice.").

**II. Article III Standing**

The Court next turns to Defendants' arguments concerning standing, which implicates this Court's subject matter jurisdiction. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998) (clarifying that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction).) In the Second Amended Complaint, Plaintiff alleges that requiring him to use communal showers violates his Fourteenth Amendment rights to bodily privacy. (Second Am. Compl. 5-11); *see*

13

*Thompson v. Lengerich*, 798 F. App'x 204, 208-09, 212 (10th Cir. 2019). Defendants argue that Plaintiff lacks Article III standing to bring this claim, because he does not allege that he ever actually took a communal shower. (Mot. 8-9.) Defendants contend, for that reason, that Plaintiff did not suffer an injury in fact. (*Id.*)

Article III standing has three required elements: (1) "injury in fact;" (2) "a causal relationship between the injury and the defendants' challenged acts;" and (3) "a likelihood that a favorable decision will redress the injury." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1181 (10th Cir. 2010) (citation omitted). "The three requirements of Article III standing—injury-in-fact, causation, and redressability—ensure that the parties to any litigation have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007)). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)). "It is the plaintiff's burden to demonstrate that these requirements are met." *Petrella*, 697 F.3d at 1293 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Further, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) (internal quotations marks and citation omitted).

14

To establish injury in fact, Plaintiff must show that he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The 'injury in fact' requirement differs 'depending on whether the plaintiff seeks prospective or retrospective relief.'" *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004)). If, as here, only retrospective relief is sought,[2] a plaintiff must show that he has suffered a past injury that is "concrete and particularized." *Tandy*, 380 F.3d at 1284. "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks and citation omitted). "Allegations of possible future injury do not establish an injury in fact." *Doe ex rel. Doe v. Hunter*, 796 F. App'x 532, 536 (10th Cir. 2019) (citations omitted); *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("Abstract injury is not enough.").

Here, Plaintiff alleges his bodily privacy rights were violated when he was "forced to needless[ly] suffer and endure 25 days of psychological torture, wherein . . . [he] could [] not fully bathe and properly care for his hygienic needs, thereby compromising his personal and environmental sanitary conditions and needs."

---

[2] In his operative pleading, Mr. Thompson makes clear that he is seeking money damages only from Defendants Cattell, Hansen, and Lengerich. (Second Am. Compl. 24.)

(Second Am. Compl. 7.) Plaintiff further alleges he was "forced by the unnecessary circumstance to live in a heightened state of fear of physical retaliation and possible assault from his cellmate for not showering." (*Id.*) He alleges the situation also caused an "exacerbation of other physical maladies," including "poor sleep, decreased appetite, weight loss, and increased migraine headaches." (*Id.* at 11.) In essence, Mr. Thompson frames his injuries—the deterioration of his mental and physical condition—as arising from his forced exposure to communal showers.

The Court finds these allegations sufficient to show that Plaintiff has suffered a "concrete and particularized" injury in fact, which is fairly traceable back to his transfer to the BVCF's Lower East Unit, and that the injury would likely be redressed by a decision in his favor. Accordingly, Plaintiff has adequate constitutional standing to pursue a Fourteenth Amendment bodily privacy claim against Defendants. *See Guy v. Espinoza*, No. 1:19-cv-00498-AWI-EPG (PC), 2020 WL 309525, at *4 (E.D. Cal. Jan. 21, 2020) (finding that a transgender inmate possessed Article III standing to bring Fourteenth Amendment claims, where the complaint alleged the inmate "has been personally threatened and intimidated by the male born inmates," and that she "suffered sexual violence and abuse prior to incarceration and has suffered aspects of PTSD since the male born inmates have been housed at CCWF"); *c.f. Lemmons v. Clymer*, 609 F. App'x 949, 954 n.3 (10th Cir. 2015) (finding an inmate's allegations— that "convicted criminals were permitted to roam free" in the prison—to be insufficient to establish injury in fact to assert a § 1983 claim); *Olive v. Harrington*,

16

No. 1:15-cv-01276-BAM (PC), 2016 WL 4899177, at *2-3 (E.D. Cal. Sept. 14, 2016) (holding that a transgendered inmate who challenged a prison policy that "compel[led] transgenders to shower in view of male prisoners" lacked standing to assert §1983 claims, where the plaintiff failed to allege "any injury as a result of the challenged practices"). Accordingly, the motion to dismiss Plaintiff's bodily privacy claim for lack of standing should be denied.

### III. Qualified Immunity

Mr. Thompson alleges that Defendants violated his Fourteenth Amendment rights to bodily privacy and equal protection under the law, as well as his Eighth Amendment rights to be free of cruel and unusual punishment. (Second Am. Compl. 5-19.) Defendants Cattell, Hansen, and Lengerich argue that they are entitled to qualified immunity with respect to these claims. (Mot. 9-21.)

#### A. Legal Standard

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once a defendant has asserted a qualified immunity defense, the

17

burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional

18

right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). The court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Brown*, 662 F.3d at 1164 (quoting *Pearson*, 555 U.S. at 236) (alterations omitted).

### B. The Bodily Privacy Claim

The Second Amended Complaint alleges that Defendants violated Plaintiff's Fourteenth Amendment bodily privacy rights by forcing him to live in a prison unit with only communal showers. (Second Am. Compl. 5-11.) The Tenth Circuit has recognized that inmates retain a limited right to bodily privacy under the Fourteenth Amendment. *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) ("Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether."); *see also Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) ("Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity."). An inmate's interest in bodily privacy may be restricted "only to the extent necessary to further the correction system's legitimate goals and policies." *Cumbey*, 684 F.2d at 714.

19

Because Defendants have invoked qualified immunity, the Court in its discretion considers, first, whether the right that Plaintiff claims—*i.e.,* the right to shower away from the presence of other male inmates—was "clearly established" at the time of the alleged misconduct. *Brown*, 662 F.3d at 1164. A right is "clearly established," only if "a Supreme Court or Tenth Circuit decision" is "on point," or if "the clearly established weight of authority" from other circuits has "found the law to be as the plaintiff maintains." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)). In other words, the legal principle at issue must exist as a matter of "settled law," meaning that it is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A plaintiff need not show "the very act in question previously was held unlawful in order to establish the absence of qualified immunity." *Gutierrez*, 841 F.3d at 900 (quoting *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008)). But a defendant "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *Id.* (quoting *City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 611 (2015)) (alterations and quotation marks omitted). Thus, clearly established law must be very close to the act alleged in the complaint and should not be defined at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather,

20

"the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants argue that the particular constitutional right at issue here—which they frame as "a right to bodily privacy from being briefly viewed by other inmates of the same sex"—was not clearly established at the time of the events in question. (Mot. 10.) Plaintiff, in response, insists that he possesses "a constitutional right to privacy," though he concedes that "there (probably) are no Supreme, or Tenth Circuit Court precedents which specifically deal[] contextually with a prisoner's psychological need(s) combined with his/her 14th Amendment bodily privacy right in relation to showering." (Resp. 6-7.) In his attempt to show that the law is clearly established, Mr. Thompson cites to two cases—*Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1982) and *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993). (*Id.* at 6.)

Mr. Thompson relies on *Cumbey* and *Fortner* for the proposition that prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement," and thus, retain a "limited" right to bodily privacy. (*Id.*) However, while this may be a true statement of the law, it defines the law at too high of a level of abstraction to show a clearly established right. In *Cumbey*, the Tenth Circuit found that inmates' constitutional rights to privacy may be violated, where female prison guards "of the opposite sex" repeatedly watch male inmates "engage[] in personal activities, such as undressing, using toilet facilities, or showering." 684 F.2d at 713-

21

14. *Fortner*, an Eleventh Circuit decision, likewise involved allegations that female prison guards regularly "view[ed] nude male inmates walking around in undershorts, showering, and using the toilet." 983 F.2d at 1026-27. In this case, by contrast, Mr. Thompson alleges that he has a constitutional right to not be seen naked by inmates of his same gender. Plaintiff fails to cite any Tenth Circuit or Supreme Court case that defines the contours of this particular right. *See Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1360 (D. Colo. 2014) (finding a plaintiff's failure to cite case law showing the right at issue was clearly established was "fatal" to the claim). Thus, Plaintiff has not carried his burden, in the face of the assertion of qualified immunity, to show that the law was clearly established as to his Fourteenth Amendment bodily privacy claim.

Nor has the Court, in its own review of the case law, been able to locate any opinions that would support a finding that the right at issue is clearly established. Indeed, other courts have repeatedly rejected claims that prisoners have a right to bodily privacy that protects them from being viewed by other inmates of the same sex. *See, e.g., Williams v. Martinez*, No. 09-cv-02387-BNB, 2010 WL 330313, at *2 (D. Colo. Jan. 20, 2010) ("[C]ourts have not extended such a limited right [to bodily privacy] to a prisoner being briefly viewed by prisoners of the same sex."); *Guy v. Tanner*, No. 12-187, 2012 WL 1565425, at *3 (E.D. La. Mar. 20, 2012) (observing that "[i]t is not uncommon even outside of prisons for members of the same gender to use communal showers, bathrooms, locker rooms, and dorms with little or no opportunity

22

for bodily privacy," and concluding that "the federal constitution simply does not require that prison officials honor [a] plaintiff's preference not to be seen naked by his fellow inmates of the same gender"), *report and recommendation adopted by* 2012 WL 1565421 (E.D. La. May 2, 2012).

Because Plaintiff has failed to show that the constitutional right at issue was clearly established, Defendants are entitled to qualified immunity with respect to this claim. For that reason, the Fourteenth Amendment bodily privacy claim should be dismissed.

### C. The Equal Protection Claim

Plaintiff alleges a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment with regard to the BVCF's shower policy. (Second Am. Compl. 12-15.) Defendants invoke qualified immunity with respect to this claim, arguing that Plaintiff has failed to show any violation of his constitutional rights. (Mot. 20-21.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). But the Equal Protection Clause "doesn't guarantee equal rights for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations." *SECSYS, LLC*

*v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271-73 (1979)). Rather, "[i]t seeks to ensure that any classifications the law makes are made 'without respect to persons,' that like cases are treated alike, [and] that those who 'appear similarly situated' are not treated differently without, at the very least, a rational reason for the difference." *Id.* at 684-85 (quoting *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 602 (2008)).

To assert a viable equal protection claim, Plaintiff must first allege facts showing that he is similarly situated to other inmates who were treated differently from him. *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). "Individuals are similarly situated only if they are alike in all relevant respects." *Grissom v. Roberts¸* 902 F.3d 1162, 1173 (10th Cir. 2018) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)). Even "slight differences in [inmates'] histories" render them not "similarly situated" for purposes of an equal protection analysis. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); *see Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006) ("[C]ourts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one-cases[.]").

Here, Plaintiff alleges that Defendants' adherence to AR #100-40, which guarantees private showers to transgender and intersex inmates, violated his equal protection rights, because the guarantee of private showers does not extend to other inmates, like himself, who suffer from PTSS/D. (Second Am. Compl. 12-15.) Mr.

24

Thompson alleges that he is "similarly situated" to "the transgender and intersexual classification of inmates housed in the East unit of BVCF," because, like those inmates, he has "personal safety concerns" with respect to communal showers. (*Id.* at 14.) Plaintiff also alleges that "every person incarcerated" by the CDOC is "similarly situated," "by virtue of the fact that upon being sentenced to the CDOC[] they become the 'property/wards' of the State." (*Id.* at 12.) Plaintiff claims that the BVCF is "an ALL (anatomically) Male general prison population," and he reports that "[t]ransgender, gender non-conforming, and intersexual inmates . . . are in fact housed and interact on a daily basis with the general population inmates of BVCF's East unit, with full access to the same facilities, programs, housing and showering areas as the plaintiff." (*Id.*)

These allegations fail to show that Mr. Thompson is similarly situated to transgendered and intersex inmates in all material respects, or plausibly foreclose the existence of all relevant differences between himself and those inmates. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) ("Templeman's claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable."). To the contrary, the allegations suggest that transgender and intersex inmates have discernable physical or behavioral characteristics which set them apart from other inmates like Plaintiff, and which put them at greater risk of attack in communal showers. For instance, Plaintiff alleges "the only physically discernible difference"

between himself and transgender inmates "is the color of tee-shirts they wear," which clearly suggests that transgender inmates are visibly distinct from other inmates, such as himself. *See Porter v. Crow*, No. 18-CV-0472-JED-FHM, 2020 WL 620284, at *8 (N.D. Okla. Feb. 10, 2020) (finding that a transgendered female inmate failed to adequately allege that she was "similarly situated" to inmates housed at female facilities, and noting that "none of Plaintiff's allegations plausibly suggests that other inmates like Plaintiff—namely, inmates who were identified as male at birth, who identify as female, who have female breasts, and who are incarcerated at an all-male facility in an open dorm—are provided female undergarments, are not housed in all-male open dorms, or are allowed to change their shirts at their assigned bunks without disciplinary action"); *Rezaq v. Nalley*, No. 07-CV-02483-LTB-KLM, 2008 WL 5172363, at *15 (D. Colo. Dec. 10, 2008) ("While Plaintiff alleges in his complaint that [he] is similarly situated to inmates in the Control Unit, he fails to plausibly articulate how it could be 'that there are other inmates who are similar in every relevant respect' or address the likelihood that a facility might 'classify inmates differently because of slight differences in their histories.'").

Therefore, absent allegations that Mr. Thompson has been treated differently from inmates who are similarly situated in all material respects, he fails to state a plausible equal protection claim against Defendants. Accordingly, Defendants are entitled to qualified immunity with respect to this claim as well. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) ("If the plaintiff fails

to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."); *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("[A] defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all.").

### D. The Eighth Amendment Claims

Mr. Thompson alleges that Defendants violated his Eighth Amendment rights by requiring him to use communal showers at BVCF. (Second Am. Compl. 5-11.) Plaintiff likewise asserts an Eighth Amendment claim based on the purportedly overcrowded and understaffed conditions at BVCF. (*Id.* at 16-19.) Defendants argue that they are entitled to qualified immunity with respect to these claims because the allegations fail to plausibly show a violation of Plaintiff's constitutional rights. (Mot. 12-18.)

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," imposes a duty upon prison officials to provide "humane conditions of confinement." U.S. CONST. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Thompson v. Lengerich*, 798 F. App'x 204, 209 (10th Cir. 2019) ("Although prison officials have broad administrative and discretionary authority to manage and control prisons, they must provide humane conditions of confinement

27

guided by contemporary standards of decency."); *see also Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (holding that prison officials must provide "reasonably adequate ventilation, sanitation, bedding, hygiene materials, and utilities").

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citing *Farmer*, 511 U.S. at 834). To satisfy the objective component, a plaintiff must show "extreme deprivations" caused by the conditions of his confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *accord Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (explaining that the alleged deprivation must be "sufficiently serious"). In other words, the conditions of confinement "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Mere "discomfort" is not enough. *Hudson*, 503 U.S. at 9 (citations omitted); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) ("The Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive or even harsh.") (internal quotation marks omitted). To satisfy the subjective component, a plaintiff must demonstrate that the prison official acted with "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834. "[D]eliberate indifference is a stringent standard of fault." *Bd. of Cty.Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Rather, the defendant must "know[] of and disregard[] an excessive risk to inmate

28

health or safety." *Farmer*, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### 1. Communal Showers

Mr. Thompson alleges that Defendants violated his Eighth Amendment rights, by failing to provide him with the "privacy and/or space" that he required to "protect" himself from "visual" and "physical (sexual) assault" by other inmates while showering. (Second Am. Compl. 11.) Plaintiff alleges that Defendants, though aware of his PTSS/D diagnosis and resulting inability to shower with other male inmates, intentionally transferred him to a BVCF unit with communal showers only. (*Id.* at 5-7, 11.) Mr. Thompson complains that due to Defendants' "combined actions/decisions," he was then deprived of the ability to "fully bathe and properly care for his hygienic needs" for approximately twenty-five days. (*Id.* at 7.)

These allegations, even taken as true, do not show "extreme deprivations" of "the minimal measure of life's necessities," as is required to state a conditions-of-confinement claim under the Eighth Amendment. *Hudson*, 503 U.S. at 8-9. Indeed, Plaintiff does not allege that he was deprived of *any* ability to clean himself, only that he refused to do so, unless specifically given a private shower. *See Foreman v. Bur. of Prisons*, No. 06-1274, 2007 WL 108457, at *1, 4 (3rd Cir. Jan. 16, 2007) (finding no Eighth Amendment violation, where a paraplegic inmate received a shower chair from the prison, as requested, but "claimed it was inadequate because it did not have

lateral supports or a center opening"); *Banks v. Argo*, No. 11 Civ. 4222(LAP), 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012) (finding no Eighth Amendment violation relating to showers, where the inmate did not allege that "he had no other means of cleaning himself"); *see also Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). In this case, it is apparent from the Second Amended Complaint that Plaintiff had the means to take a shower, as well as access to some form of running water, such as a sink.

Importantly, even assuming Defendants' actions *did* totally deprive Plaintiff of any ability to bathe for twenty-five days, as alleged, such a limited deprivation, alone, does not necessarily violate the Eighth Amendment. *See Richard v. Aldridge*, No. 2:19-cv-2006 DB P, 2020 WL 469348, at *2 (E.D. Cal. Jan. 29, 2020) ("There is no constitutional right to a certain number of showers per week and an occasional or temporary deprivation of a shower does not rise to the level of a constitutional violation."); *Barndt v. Wenerowicz*, No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016) ("Denial of showers for a temporary period of time is not a constitutional violation."). In evaluating whether the denial of a shower amounts to "cruel and unusual punishment," the Court must consider "the frequency and duration of the condition, as well as the measures employed to alleviate the condition." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). In this case, Plaintiff alleges only a single shower deprivation, which lasted twenty-five days. Federal courts have

routinely dismissed Eighth Amendment claims, predicated solely upon similar allegations of temporarily inadequate shower access. *See, e.g.*, *Scott v. Carpenter*, 24 F. App'x 645, 648 (8th Cir. 2001) (finding no Eighth Amendment violation, where a disabled inmate received only fifteen showers over six months and once went twenty-eight days without a shower, where the evidence showed that the inmate's cell had "soap, water, wash cloths, and towels," and where prison officials "offered [the inmate] showers or warm water for sponge baths at his request and never interfered with his requests"); *Barndt*, 2016 WL 6612441, at *4 (finding no Eighth Amendment violation resulting from "the denial of out of cell exercise and showers for twenty-eight days," where evidence showed that the inmate "had the space to exercise and running water inside his cell").

In this case, Plaintiff has not met the Rule 8(a) pleading standard to allege that his temporary deprivation of a *private* shower (as opposed to *any* shower or water source) amounted to cruel and unusual punishment. For that reason, Defendants are entitled to qualified immunity as to this claim, as well.

### 2. Overcrowding/Understaffing

Mr. Thompson next alleges a violation of his Eighth Amendment rights arising from the overcrowded and understaffed conditions at BVCF. As to overcrowding, Plaintiff alleges he was forced to share a fifty-four square foot, double-bunked cell with another inmate, which had "inadequate ventilation," and which provided him "no access to outdoor fresh air & exercise." (Second Am. Compl. 17-18.) Plaintiff

31

alleges he was forced to endure a prison-wide "lockdown," caused by an outbreak of the flu, for a period of eleven consecutive days, during which "no disinfectants or other basic (necessary) cleaning supplies were provided," and "showering was only allowed for 10 minutes at a time on 4 separate occasions." (*Id.* at 18.) Finally, Plaintiff alleges the overcrowding, coupled with BVCF's "chronic staffing shortfalls," caused him to fear for his physical safety. (*Id.* at 16-17.)

Even taken as true, these allegations fail to show an objectively serious deprivation of Mr. Thompson's basic human needs. First, the purportedly cramped conditions of Plaintiff's cell, alone, do not show an Eighth Amendment rights violation. *See Rhodes v. Chapman*, 452 U.S. 337, 344 (1981) (holding that a prison's practice of "double celling" inmates in 63 square foot cells was not a *per se* violation of the Eighth Amendment); *see also D'Attore v. New York City,* No. 10 Civ. 3102(JSR)(MHD), 2011 WL 3629166, at *6 (S.D.N.Y. June 2, 2011) (acknowledging that "less than sixty square feet of bed space" in a prison cell "may be an inconvenience," but concluding that it does not necessarily constitute cruel and unusual punishment). The allegations that Plaintiff was forced to endure an eleven-day lockdown in his cell with only limited shower access and no access to cleaning supplies are likewise insufficient to state a claim for relief. *See Estrada v. Kruse*, 38 F. App'x 498, 498-99 (10th Cir. 2002) (allegations that a prisoner was held for four nights and five days "in a stripped basement intake cell" with only "minimal clothing and bedding, no personal hygiene items, and no cleaning supplies for the cell" did not

32

rise to the level of a constitutional rights violation); *Smith v. Romer*, 107 F.3d 21, 1997 WL 57093, at \*2 (10th Cir. Feb. 11, 1997) (unpublished table decision) (allegations of confinement for twenty-three hours per day, meals in cells, limited recreational services, exercise of one hour per day in cell, lights that did not turn off, and unsanitary shower stalls did not state a sufficiently serious deprivation under the Eighth Amendment).

And, to the extent Plaintiff asserts the overcrowded/understaffed conditions at BVCF caused him to fear for his physical safety, he fails to plausibly allege any actual injury he suffered as a result. *See Dittmeyer v. Whetsel*, 91 F. App'x 111, 119 (10th Cir. 2004) (affirming the dismissal of Eighth Amendment claims relating to overcrowding and unsanitary conditions, where the plaintiff admittedly "experienced no physical injuries" due to those conditions). Nor does he allege the conditions about which he complains deprived him of the minimal civilized measure of life's necessities, such as food, clothing, or shelter. Rather, Plaintiff alleges only that he has "personally" seen violent incidents, which have caused him to fear for his own safety.[3] However, this is not enough to state an Eighth Amendment claim. *See Smith v. Whetsel*, No. CIV-16-1487-HE, 2017 WL 1194712, at \*3 (W.D. Okla. Mar. 31, 2017)

---

[3] To the extent that Plaintiff alleges that other inmates suffered serious physical assaults due to the overcrowded/understaffed conditions at BVCF, Plaintiff cannot recover damages for purported violations of those individuals' constitutional rights. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (Courts must "keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else.").

(allegations of "overcrowding, gang violence, and the general condition of the detention center" insufficient to state an Eighth Amendment claim, where the plaintiff alleged no injury to himself arising from the conditions, aside from the fact that he was "shoved against a wall more than once").

In this case, absent specific allegations that Plaintiff was deprived of a basic need, such as food or clothing, or that he was the victim of violence, and where no injury is asserted beyond discomfort, Plaintiff has failed to allege a violation of his Eighth Amendment rights. Therefore, Defendants are entitled to qualified immunity as to Plaintiff's remaining Eighth Amendment claims.

**WHEREFORE**, for the foregoing reasons, this Court **RECOMMENDS** that the "Motion to Dismiss the Second Amended Complaint [ECF No. 82] Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Doc. No. 94) be **GRANTED**. Specifically, Plaintiff's claims against the CDOC should be **DISMISSED without prejudice**, under Rule 12(b)(1), for lack of subject matter jurisdiction. Plaintiff's claims against Defendants Cattell, Hansen, and Lengerich should be **DISMISSED** under Rule 12(b)(6), for failure to state a claim for relief. The Motion should be **DENIED** in all other respects.

It is further **RECOMMENDED** that this case be **DISMISSED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District

34

of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but*

35

*see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule

does not apply when the interests of justice require review).

Dated: February 28, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

36